Opinion issued April 26, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00400-CR

———————————

james barkley lindsey, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the County Criminal Court at Law No. 1

Harris County, Texas



Trial Court Case No. 1713575

 



 

MEMORANDUM OPINION

          A
jury found appellant, James Barkley Lindsey, guilty of the misdemeanor offense
of assault of a family member,[1] and the trial court assessed
his punishment at confinement for one year, suspended the sentence, and placed
appellant on community supervision for two years.  In two issues, appellant contends that the
evidence is legally insufficient to support his conviction and there is a
“fatal variance” between the evidence presented and the information filed by
the State.  

          We
affirm.

Background

          Ruby
Lindsey, the complainant, testified that she and appellant, to whom she was
married, had two daughters.  She
explained that, while she was away from home and traveling on a business trip
with another male employee, appellant called her and accused her of “cheating”
on him with the male employee.  Before returning
home from her business trip, the complainant texted appellant’s best friend,
Josh Selph, and asked him to calm appellant down.  When the complainant returned home on October
13, 2010, she saw appellant and Selph standing under the carport of their home.  She entered the home through the front door
to pack her things, and appellant followed her into the bedroom.  The complainant told appellant that she was
leaving, and he replied, “You’re not leaving.” 
When appellant picked up a bottle and started to throw it, the
complainant ran into a closet.  Appellant
told the complainant that he was going to kill her, he grabbed her hair, and
the couple fell against the back wall.  Appellant
was “pulling [her] hair and banging [it] into the wall,” and pushing and
banging her head.  The complainant stated
that it “hurt,” and she noted that appellant had pulled some of her hair out of
her head.  When she started screaming, Selph
attempted to restrain appellant. 
Appellant held the complainant “by the hair and kind of against the
wall,” and Selph tried to get appellant’s “arms off of [her].”  Once Selph restrained appellant, the
complainant attempted to leave through the front door, but appellant ran at her
and grabbed her arms and “slammed” her back into the door.  The door and glass broke, and appellant kept pushing
and holding her.  Once Selph restrained
appellant, she was able to leave.  The
complainant was scared, crying, and frantic. 


The complainant went to the home of
her sister and brother-in-law, and they called for emergency assistance.  The complainant was subsequently escorted back
home by a police officer to get some clothes. 
The officer observed the broken glass on the floor of the home and a
bruise on the bottom of her back and her chin. 
An investigator contacted the complainant two days later.  He interviewed her and took photographs of
her injuries. The complainant explained that the photographs, which were introduced
into evidence, depicted bruises on her forearms, thigh, and lower back and a scratch
on her chin.  She stated that the bruise
on her back and the scratch on her chin were caused by being slammed into the
door and the other bruises were caused by being grabbed; however, she later acknowledged
that the scratch could have come from her fingers during the assault. 

On cross-examination, the
complainant stated that she and appellant “fell to [the] ground when he grabbed
[her] hair” and he had pulled her down. 
She agreed that she could not remember whether she had told the police
officers at the scene that appellant had slammed her head into the wall.  And she agreed that she had “sarcastically”
told appellant that she was having an affair. 


Chris Torres, the complainant’s
brother-in-law, testified that he received a telephone call from the
complainant, who was frantic and crying uncontrollably, and she told him that
appellant had just “beat” her.  When the complainant
arrived at his house, she had “strands of hair on her lower back,” was upset,
and looked like she had been in an altercation. 
Torres noticed that a cut on her chin was bleeding, and he subsequently
noticed bruises on her arms.  Rhonda Torres,
the complainant’s sister, testified that when the complainant arrived at her
house, she was hysterical, had a cut on her chin, and “wads” of hair had been
pulled from her head.  The complainant
told her that appellant had pulled her hair out of her head and pushed her
against a glass door.  

HPD Officer J. Medal testified that
she met with the complainant at a police substation after the assault, and the
complainant, who was scared and shaken, reported that appellant had assaulted
her.  Medal noticed that hair had come
out of the complainant’s head and was on her shirt.  Medal then referred to her offense report,
which reflected that the complainant had reported that appellant had pushed her
into a door.  Medal also stated that she
had observed scratch marks on the complainant’s chest and chin and marks on her
back, and she believed that the injuries were consistent with someone who had
been pinned up against a wall and glass door and assaulted.  However, Medal agreed that she did not
indicate on her offense report that she saw injuries on the complainant’s arms.  

HPD Officer J. Rice testified that
she received a telephone call regarding a domestic violence incident, and she escorted
the complainant home so that she could get some of her belongings.  Rice did not initially observe any injuries
to the complainant.  Rice explained that,
while driving the complainant back to her home, she encountered appellant and
Selph in a truck and she stopped appellant for questioning.  Rice agreed that she had instructed the complainant
to stay away from appellant’s truck, but, when Rice was speaking with
appellant, the complainant disobeyed her instructions and removed her daughter
from appellant’s truck and placed her daughter in her car.   Rice stated that she detained appellant for
her safety and then went inside the home with the complainant.  Rice noticed that the front door was broken
and there was glass “all over” the floor. 
The complainant showed Rice some scratches on her chin and small bruises
on her lower back.  On cross-examination,
Rice agreed that appellant was cooperative, had complied with her instructions,
and was not aggressive.  She also agreed that
the complainant did not comply with her instructions during the incident. 

Josh Selph, who was a friend of both
appellant and the complainant, testified that, in response to the complainant’s
request, he agreed to meet appellant before the complainant returned home to
try to prevent an argument.  After the complainant
arrived home, she went inside, stayed there a few minutes, returned outside
through the garage, and called appellant a derogatory name.  The complainant and appellant began arguing,
and the three went back inside the home. 
The complainant told appellant that she had slept with another man, and
she threw a candle at appellant, who then threw his cellular telephone at the complainant.  Selph asked the complainant to leave, and she
did.  Selph explained that the complainant
and appellant were in his sight 100% of the time and appellant never pushed the
complainant, never pulled her hair, and never fell to the ground.  

Appellant testified that he had
asked the complainant not to go on the business trip with the male co-worker
because there had been “problems” with this co-worker in the past.  Appellant called the complainant while she
was on the trip, and she told him she had been “cheating” on him with this
employee.  Appellant and Selph were
standing in the carport of the home when the complainant arrived back from her
trip, and the complainant walked inside the home.  When the complainant called appellant a
derogatory name, they began arguing, and the complainant admitted to “cheating”
on appellant.  Appellant then called the complainant
a derogatory name, she threw a candle at him, he threw his cellular telephone
against the wall, and the complainant left.  
Appellant denied following the complainant into the home, grabbing her
hair, hitting her head against the wall, or pushing her against the door.  Appellant explained that he later kicked in
his front door.     

Standard of Review

We review the legal sufficiency of
the evidence by considering all of the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318–19, 99 S. Ct. 2781, 2788–89 (1979).  Our
role is that of a due process safeguard, ensuring only the rationality of the
trier of fact’s finding of the essential elements of the offense beyond a
reasonable doubt.  See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).  We give deference to the responsibility of the
fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to
draw reasonable inferences from the facts.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed” the criminal offense of which he is accused.  Id.     

 

 

Sufficiency

          In
his first issue, appellant argues that the evidence is legally insufficient to
support his conviction because “the record contains no evidence, or merely a
modicum of evidence, probative of an element of the offense—specifically that
appellant struck [the complainant] with his hand or pulled or pushed her
intentionally or knowingly.”  He asserts
that the complainant’s testimony only established that he had “grabbed the
complainant by the hair,” the complainant’s testimony “conclusively reveals”
that she and appellant fell to the floor “together” and neither caused the
fall, the complainant never testified that appellant “struck her with his
hand,” and nothing in the complainant’s “story suggests that [appellant]
intentionally or knowingly pushed or pulled her.”   

          A
person commits the misdemeanor offense of assault if the person intentionally,
knowingly, or recklessly causes bodily injury to another, including the person’s
spouse.  Tex. Penal Code Ann. § 22.01(a) (Vernon 2011).  Bodily injury is defined as “physical pain,
illness, or any impairment of physical condition.”  Id.
§ 1.07(a)(8) (Vernon Supp. 2011).  The
State, in the information, alleged that appellant intentionally and knowingly
caused bodily injury to the complainant by “STRIKING THE COMPLAINANT WITH HIS
HAND,” “PULLING THE COMPLAINANT WITH HIS HAND,” and “PUSHING THE COMPLAINANT
WITH HIS HAND.”

 

The complainant’s testimony
supports an affirmative finding on each of the elements of the offense as
alleged.  She testified that appellant grabbed
her hair, pulled her, and pushed and banged her onto the floor and into a wall
and door.  The complainant noted that,
during the assault, appellant held her “by the hair and kind of against the
wall,” and Selph sought to remove appellant’s arms from her.  She explained that appellant ran at her, grabbed
her arms, and “slammed” her back into the front door so that the door and glass
broke.  And she noted that she was hurt
and sustained bodily injuries from the assault. 
Thus, the complainant provided direct evidence that she suffered pain and
bodily injury.  Laster v. State, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009).  Her testimony is sufficient to support the
conviction.  See Johnson v. State, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st
Dist.] 2004, pet. ref’d) (“The testimony of a single eyewitness . . . is
sufficient to support a felony conviction.”).  Moreover, the complainant presented multiple
other witnesses that testified that she exhibited visible injuries shortly
after the assault.  To the extent that
appellant asserts that there is no evidence of intent to cause bodily injury,
such intent may be inferred from his acts.  See Laster, 275 S.W.3d at 524; see also Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Although
both appellant and Selph testified that appellant did not assault the
complainant, the jury, as the trier of fact, is the sole judge of the
credibility of the witnesses and the weight to give to their testimony, and it was
free to resolve the conflict in favor of the complainant.  Fuentes
v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  

Viewing the evidence in the light
most favorable to the prosecution, we conclude that a rational trier of fact
could have found beyond a reasonable doubt that appellant committed the offense
of assault of a family member. Accordingly, we hold that the evidence is legally
sufficient to support appellant’s conviction.

We overrule appellant’s first
issue.

Variance

          In
his second issue, appellant argues that the evidence is legally insufficient to
support his conviction because a “fatal variance” exists between the evidence
presented at trial and “that which was required from the information,
specifically, that the complainant’s injury was the result of pain from
[appellant] pulling the complainant’s hair.” Within this issue, appellant
asserts that, contrary to the information, the complainant did not testify that
appellant struck her with his hand. 
Appellant further asserts that he “never received notice” regarding an
alleged assault “wherein the manner and means involved him pulling the
complainant’s hair” and there is no evidence that the “investigation involved
allegations of . . . pulling the complainant’s hair.” 

A “variance” occurs when there is a
discrepancy between the allegations made in a charging instrument and the proof
presented at trial.  Gollihar v. State, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).  When faced with a challenge to the legal
sufficiency of the evidence based upon a variance between the indictment and
the proof, only a “material” variance will render the evidence legally
insufficient. Id. at 257.  A variance between the charging instrument and
the evidence presented at trial is fatal only if it is material and prejudices
the defendant’s substantial rights. Id.
(citation omitted).  This materiality
inquiry requires a determination of whether the variance deprived the defendant
of notice of the charges or whether the variance subjects the defendant to the
risk of later being prosecuted for the same offense.  Fuller
v. State, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002).

Appellant’s arguments are based
upon a recitation of facts that is not supported by the record.  As noted above, the State, in the
information, accused appellant of intentionally and knowingly causing bodily
injury to the complainant by “striking,” “pulling,” and “pushing” her “with his
hand.”  Contrary to appellant’s assertions,
the complainant testified that, during the course of the assault, appellant
pulled and pushed her head, grabbed her, and slammed her against a door.  It is true that the complainant did not refer
expressly to appellant’s use of his “hands” each time that she explained that he
had banged or “slammed” her head or body into the floor, a door, and a wall
during the course of the assault. 
However, a reasonable fact finder could have inferred from her testimony
that appellant did use his hands during the assault and that his hands
inflicted bodily injury.  Moreover, the
complainant specifically testified that, during the assault, appellant grabbed
her and that Selph tried to remove appellant’s arms from her body.  A reasonable fact finder could also have
found that the complainant fell to the ground as a result of appellant’s having
pushed and pulled her during the assault. 


In sum, the complainant testified
that appellant initiated the assault and continued it as she attempted to leave
the home.  Although the complainant
admitted to kicking at appellant as she was being assaulted, she testified that
she was hurt and sustained injuries after being pushed, pulled, and “slammed.”  Accordingly, we hold that there was no fatal
variance between evidence presented at trial and that which was required from
the information.

We overrule appellant’s second
issue.  

 

 

 

 

 

 

 

 

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Massengale, and Huddle.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 22.01(a)(1) (Vernon
2011).